UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK                    x

In re:                                                    Chapter 11

WOOZYFLY, INC.                                     Case No. 09-13022 - JMP

                        Debtor.

─────────────────────────────────────           x


**SECOND AMENDED PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR
AND CO-PLAN PROPONENT MKM OPPORTUNITY MASTER FUND, LTD.**


**OLSHAN GRUNDMAN FROME
ROSENZWEIG &WOLOSKY LLP**
Counsel for the Debtor

Michael S. Fox, Esq.
Andrea Fischer, Esq.
Jordanna L. Nadritch, Esq.
Park Avenue Tower
65 East 55th StreetNew York, New York
10022-1106
Telephone:  212.451.2300
Facsimile:  212.451.2222


Dated:  November 23, 2009


839326-3

## Table of Contents

                                                                                                    Page

ARTICLE I         CERTAIN DEFINITIONS ...........................................................................1

ARTICLE II        CLASSIFICATION OF CLAIMS AND INTERESTS ...................................6

    2.1.    Class 1 (Non-Tax Priority Claims). ........................................................................6
    2.2.    Class 2 (Secured Claims)........................................................................................6
    2.3.    Class 3 (Noteholder Claims)...................................................................................6
    2.4.    Class 4 (General Unsecured Claims). .....................................................................7
    2.5.    Class 5 (Interests)...................................................................................................7

ARTICLE III       TREATMENT OF UNCLASSIFIED CLAIMS .........................................7

    3.1.    Administrative Expense Claims...............................................................................7
    3.2.    Unclassified Claims ................................................................................................7
    3.3.    Bar Dates for Non-Professional Administrative Expense Claims ...........................7
    3.4.    Professional Fees ....................................................................................................7
    3.5     U.S. Trustee Fees ...................................................................................................8
    3.5.    Priority Tax Claims ................................................................................................8

ARTICLE IV        TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ....................8

    4.1.    Class 1 (Non-Tax Priority Claims) .........................................................................8
    4.2.    Class 2 (Secured Claims) .......................................................................................8
    4.3.    Class 3 (Noteholder Claims)...................................................................................8
    4.4.    Class 4 (General Unsecured Claims) ......................................................................8
    4.5.    Class 5 (Interests)...................................................................................................8
    4.6.    Reservation of Rights .............................................................................................8

ARTICLE V         CONDITIONS PRECEDENT TO THE EFFECTIVE DATE..........................9

    5.1.    Conditions Precedent. .............................................................................................9

ARTICLE VI        MEANS FOR IMPLEMENTATION OF THE PLAN ...................................9

    6.1.    Waiver of Conditions Precedent to the Effective Date .............................................9
    6.2.    Merger ....................................................................................................................9
    6.3.    Vesting of Post-Confirmation Assets in Reorganized Debtor for Distribution.........10
    6.4.    Dissolution of C.J. Vision Enterprises, Inc. ..........................................................10
    6.5.    Certificate of Incorporation and By-Laws of Reorganized Debtor, Directors, Officers
          and Corporate Action ............................................................................................10
    6.6.    Cancellation of Instruments and Stock...................................................................10
    6.7.    Issuance of Reorganized Debtor Common Stock ....................................................10
    6.8     Settlement of Disputed Claims Prior to the Effective Date......................................11
    6.9     Operating Reports .................................................................................................11

839326-3

Table of Contents
(continued)

ARTICLE VII    BAR DATES, CLAIMS OBJECTIONS AND DISTRIBUTIONS ................ 11
7.1.    Distributions for Claims Allowed as of the Effective Date ...................................... 11
7.2.    Means of Cash Payment .......................................................................................... 11
7.3.    Delivery of Distribution .......................................................................................... 11
7.4.    Objection Deadline; Prosecution of Objections; Late Filed Claims Expunged ........ 12
7.5.    No Distributions Pending Allowance ...................................................................... 12
7.6.    Withholding and Reporting Requirements .............................................................. 12
7.7.    Setoffs .................................................................................................................... 12

ARTICLE VIII   EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                DEEMED REJECTED ............................................................................ 12

ARTICLE IX    EFFECTS OF CONFIRMATION ............................................................. 13
9.1.    Discharge ................................................................................................................ 13
9.2.    Injunction ............................................................................................................... 13
9.3.    Exculpation and Limitation of Liability .................................................................. 13
9.4.    RELEASES ............................................................................................................ 14
9.5.    Legal Binding Effect .............................................................................................. 14
9.6.    Insurance ................................................................................................................ 14

ARTICLE X     RETENTION OF JURISDICTION ........................................................... 14

ARTICLE XI    MISCELLANEOUS PROVISIONS .......................................................... 15
11.1.   Revocation, Withdrawal or Non-Consummation ................................................... 15
11.2.   Severability of Plan Provisions .............................................................................. 16
11.3.   Exemption from Transfer Taxes ............................................................................. 16
11.4.   Interest Accrual ...................................................................................................... 16
11.5.   Allocation of Plan Distributions between Principal and Interest ............................. 16
11.6.   Rules of Interpretation; Computation of Time ....................................................... 16
11.7.   Successors and Assigns .......................................................................................... 17
11.8.   Governing Law ....................................................................................................... 17
11.9.   Entire Agreement .................................................................................................... 17
11.10.  Modification of the Plan ......................................................................................... 17

The Plan Proponents, who are comprised of the Debtor together with the MKM Opportunity Master Fund, Ltd., hereby propound this Chapter 11 Plan of Reorganization.[1]

# ARTICLE I
## CERTAIN DEFINITIONS

Unless otherwise provided in the Plan, all capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Bankruptcy Code. For the purposes of the Plan, the following terms (which are capitalized in the Plan) shall have the meanings set forth below.

"**Administrative Expense Claim**" means a Claim for costs and expenses of administration of the Chapter 11 case allowed under §§ 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating the businesses of the Debtor (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims of governmental units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under §§ 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Debtor's Estate under § 1930, chapter 123 of title 287 of the United States Code.

"**Allowed Claim**" means a Claim (a) as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; or (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by a Final Order; (ii) by an agreement between the Holder of such Claim and the Debtor or Reorganized Debtor; or (iii) pursuant to the terms of the Plan. For purposes of computing distributions under the Plan, the term "Allowed Claim" shall not include interest on such Claim from and after the Petition Date, except as provided in Bankruptcy Code § 506(b) or as otherwise expressly set forth in the Plan.

"**Bankruptcy Code" or the "Code**" means title 11 of the United States Code, 11 U.S.C. §§101 et seq., as now in effect or hereafter amended.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or any court having competent jurisdiction to enter the Confirmation Order.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, the Local Rules of the United States

---

[1] All financial information, including without limitation the estimates of Claims and other expenses of the Debtor, which the Plan Proponents have utilized in the Plan and the Disclosure Statement have been provided by the Debtor. The Plan Proponent has not independently verified such financial information and is relying upon the Debtor's disclosures.

District Court for the Southern District of New York, and the Local Rules of the Bankruptcy Court, as applicable to the Cases or proceedings therein, as the case may be.

"**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by the applicable Debtor pursuant to Bankruptcy Rule 1007, as same may be amended or supplemented from time to time.

"**Business Day**" means any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

"**Case**" means the Chapter 11 case, assigned Case No 09-13022 (JMP) in the Bankruptcy Court  styled, In re Woozyfly, Inc.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**C.J. Vision**" means C.J. Vision Enterprises, Inc., the Debtor's wholly owned subsidiary.

"**Claim**" means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

"**Claims Objection Deadline**" shall mean that date which is 120 days after the Effective Date or as otherwise extended by the Bankruptcy Court.

"**Class**" means all of the Holders of Claims or Interests having characteristics substantially similar to the other Claims or Interests and which have been designated as a class in the Plan.

"**Confirmation**" means the entry of the Confirmation Order on the Bankruptcy Court's docket.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court at which the Bankruptcy Court will consider the Confirmation of the Plan pursuant to Bankruptcy Code § 1128.

"**Confirmation Order**" means the order of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, confirming the Plan pursuant to Bankruptcy Code § 1129.

"**Creditor**" means a Holder of a Claim.

"**Debtor**" means Woozyfly.

"**DIP Claim**" means the secured claim of the DIP Lender for post-petition financing approved by Court order.

2

839326-3

"**DIP Claim Distribution**" means the distribution of 500,000 shares of Reorganized Debtor Common Stock and 2,140,000 shares of Reorganized Debtor Convertible Preferred Stock on behalf of the DIP Claim.

"**DIP Lender**" means MKM Opportunity Master Fund, Ltd.

"**DIP Loan**" means the amounts loaned to the Debtor by the DIP Lender in order to allow the Debtor to fund the administrative costs of this Case.

"**Disclosure Statement**" means the Disclosure Statement for the Debtor's Plan of Reorganization dated June 29, 2009, as amended from time to time, together with any supplements, amendments, or modifications thereto.

"**Disputed Claim**" means any Claim as to which the Debtor or the Reorganized Debtor has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor or Reorganized Debtor in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

"**Distribution**" means the distribution of Reorganized Debtor Common Stock and Reorganized Debtor Convertible Preferred Stock by the Reorganized Debtor to the Holders of Allowed Claims pursuant to the Plan.

"**Distribution Date**" means the date on which a Distribution is made under the Plan.

"**Effective Date**" means the first Business Day on which all conditions precedent to the effectiveness of the Plan have been satisfied or waived as provided in Article V of the Plan; provided, however, the Effective Date may occur on such other later date agreed to by the Plan Proponents.

"**Estate**" means the Debtor's estate created by Bankruptcy Code § 541 upon the commencement of the Case.

"**Filed**" means filed with the Bankruptcy Court in the Debtor's Case.

"**Final Order**" means an order entered by the Bankruptcy Court or other court of competent jurisdiction on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or a similar rule under the Federal Rules of Bankruptcy Procedure may be filed with respect to such order.

3

"**General Unsecured Claim**" shall mean any unsecured Claim which is not an Administrative Claim, Priority Claim, Priority Tax, or Interest and that arose prior to the filing of the Debtor's Chapter 11 Case and includes, without limitation, Claims based upon pre-petition trade accounts payable or a Claim based upon the rejection of an executory contract during pendency of the Chapter 11 Cases.

"**General Unsecured Claims Distribution**" means .32% of the Reorganized Debtor Common Stock to be distributed *pro rata* to Class 4 General Unsecured Claims, provided by the DIP Lender out of the DIP Claim Distribution.

"**Holder**" means any Person holding a Claim or interest against the Debtor's Estate.

"**Impaired**" means any Claim or Old Equity Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"**Interest**" means the legal, equitable, contractual and other rights of the Holders of any equity interest in the Debtor, including the rights of any Person to purchase or demand the issuance of any Interest, including (a) conversion, exchange, voting, participation and dividend rights; (b) liquidations preferences; (c) stock options, warrants and put rights; and (d) share-appreciation rights; or (e) any other stock right pertaining or in any way relating to the Debtor.

"**Lien**" means any charge against, or interest in, property to secure payment of a debt or performance of a Claim.

"**Merger**" means the agreement and plan of merger by and between the Debtor and Old STW pursuant to which, Old STW, together with its business and assets, will be merged with and into a newly formed wholly owned subsidiary of the Reorganized Debtor on the Effective Date.

"**Merger Documents**" means the agreement and plan of merger effectuated the Merger, together with all other documents required or desired to be executed in connection with the Merger.

"**Merger Parties**" means Old STW and the Reorganized Debtor.

"**New STW**" means STW Global, Inc.

"**Notes**" means the (i) 6% convertible notes due June 30, 2011 issued pursuant to that certain Loan and Security Agreement dated as of July 25, 2008, by Woozyfly and the lenders named therein; (ii) promissory note due June 30, 2009, among Woozyfly and Powell Consulting Group, Inc. and (iii) promissory note due June 30, 2009, among Woozyfly and DigitalFX International, Inc.

"**Noteholder Claims**" means the Claims due under the Notes.

"**Noteholder Distribution**" means 1,760,000 shares. of Reorganized Debtor Common Stock to be distributed *pro rata* to Class 3 Noteholders holding Allowed Claims.

839326-3

"**Old STW**" means STW Resources, Inc., an unrelated privately held company, which will merge with and into a newly formed wholly owned subsidiary of the Reorganized Debtor on the Effective Date.

"**Person**" means any person or entity of any nature whatsoever, specifically including, but not limited to, an individual, firm, company, corporation, partnership, trust, governmental unit, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization or other entity.

"**Petition Date**" means May 12, 2009, the date on which the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code.

"**Plan**" means this Plan of Reorganization, as it may be amended, modified, or supplemented from time to time as permitted herein.

"**Plan Documents**" means all documents, forms, lists, and agreements contemplated under the Plan to effectuate the terms and conditions hereof.

"**Plan Proponent**" means MKM Opportunity Master Fund, Ltd.

"**Plan Proponents**" means the Debtor and MKM Opportunity Master Fund, Ltd.

"**Plan Supplement**" means the compilation of Plan Documents and other documents, forms, lists, and schedules as specified in the Plan and Disclosure Statement which will be filed with the Bankruptcy Court not later than ten (10) days prior to the Voting Deadline, as such documents may be altered, restated, modified, or supplemented from time to time.

"**Post-Confirmation Assets**" means all of the assets of the Debtor, all of which assets shall be turned over to the Reorganized Debtor on the Effective Date.

"**Priority Claim**" means all Claims that are entitled to priority pursuant to Bankruptcy Code § 507(a) and that are not Administrative Expense Claims or Priority Tax Claims.

"**Priority Tax Claim**" means a Claim of a governmental unit of the kind specified in Bankruptcy Code §§ 502(i) and 507(a)(8).

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim and conforming substantially to the appropriate official form.

"**Pro Rata**" means the proportion that the amount of an Allowed Claim bears, respectively, to the aggregate amount of all Claims in its Class, including Disputed Claims but excluding Disallowed Claims. For purposes of this calculation, the amount of a Disputed Claim will equal the lesser of (a) its Face Amount, and (b) the amount estimated as allowable by the Bankruptcy Court.

"**Reorganized Debtor**" means Woozyfly as it continues after the Confirmation Date.

5

"**Reorganized Debtor Common Stock**" means common stock shares of the Reorganized Debtor authorized under the certificate of incorporation and the by-laws of the Reorganized Debtor and issued after the Effective Date.

"**Reorganized Debtor Convertible Preferred Stock**" means convertible preferred stock shares of the Reorganized Debtor authorized under the certificate of incorporation and the by-laws of the Reorganized Debtor and issued after the Effective Date.

"**Reorganized Debtor Stock Creditor Distribution**" means the distribution of Reorganized Debtor Stock to specified Creditors of the Debtor under the Plan in accordance with the following priority: (i) The Reorganized Debtor Stock Creditor Distribution shall be calculated by giving full value to the DIP Claim, which shall amount to the DIP Claim Distribution less the General Unsecured Claim Distribution, (ii) 1,760,000 shares of the Reorganized Debtor Common Stock to be distributed *pro rata* to the Class 3 Noteholder Claims, and (iii) the General Unsecured Claims Distribution. The Reorganized Debtor Common Stock Creditor Distribution shall be exempt from all registration requirements pursuant to Bankruptcy Code § 1145.

"**Scheduled**" means included in or listed in the Debtor's Bankruptcy Schedules, as initially filed or as amended.

"**Securities Act**" means the Securities Act of 1933, 15 U.S.C. § 77c-77aa, in effect from time to time.

"**SEC**" means the United States Securities and Exchange Commission.

"**STW Global, Inc.**" will be the name of the Reorganized Debtor after the Merger.

"**STW Sub**" means a newly formed wholly owned subsidiary of the Reorganized Debtor into which Old STW will merge on the Effective Date.

"**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930.

"**Woozyfly**" means Woozyfly, Inc.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1.    **Class 1 (Non-Tax Priority Claims).  – INTENTIONALLY OMITTED**

2.2.    **Class 2 (Secured Claim) – INTENTIONALLY OMITTED**

2.3.    **Class 3 (Noteholder Claims**)

    (i)    Classification:  Class 3 consists of all Noteholder Claims.

     (ii)    Treatment:  The Holders of Class 3 Noteholder Claims will receive a Pro Rata share of 1,760,000 shares of the Reorganized Debtor Common Stock pursuant to the Reorganized Debtor Common Stock Creditor Distribution.

     (iii)   Voting:  Class 3 is an Impaired Class.  Therefore, the Holders of Noteholder Claims in Class 3 are entitled to vote to accept or reject the Plan.

**2.4.  Class 4 (General Unsecured Claims)**.

     (i)    Classification:  Class 4 consists of all General Unsecured Claims against the Debtor as of the Petition Date.

     (ii)    Treatment:  The Holders of Class 4 General Unsecured Claims will receive a Pro Rata share of 100,000 shares of the Reorganized Debtor Common Stock pursuant to the Reorganized Debtor Common Stock Creditor Distribution.

     (iii)   Voting:  Class 4 is an Impaired Class.  Therefore, the Holders of General Unsecured Claims in Class 4 are entitled to vote to accept or reject the Plan.

**2.5.  Class 5 (Interests)**.

     (i)    Classification:  Class 5 consists of Holders of the Debtor's equity interests.

     (ii)    Treatment:  The Holders of Class 5 Interests shall receive no distribution under the Plan on account of such Interests and such Interests will be cancelled and fully extinguished pursuant to, and on the Effective Date of, the Plan.

     (iii)   Voting:  Class 5 is an Impaired Class.  Pursuant to Section 1126(5) of the Bankruptcy Code, Class 5 Interest are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

**3.1.  Administrative Expense Claims**.  All Allowed Administrative Expense Claims shall be paid in full in Cash, or as otherwise agreed, on the Effective Date.

**3.2.  Unclassified Claims.**  The Holder of the DIP Claim will receive, in full satisfaction of its Claim, the DIP Claim Distribution less the General Unsecured Claims Distribution.

**3.3.  Bar Dates for Non-Professional Administrative Expense Claims**.  The Bar Date for Holders of Administrative Expense Claims other than those of professionals retained by the Debtor shall be thirty (30) days after the Plan Order becomes a Final Order..

**3.4.  Professional Fees**.  All applications for professional fees for services rendered and reimbursement of expenses in connection with the Case prior to the Effective Date are Administrative Expense Claims and shall be filed with the Bankruptcy Court within sixty (60) days after the Effective Date.  Any such application not filed within sixty (60) days

7

after the Effective Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. All retained professionals shall be paid the full amounts awarded by the Court, subject to any caps agreed to in the retention. All such awarded fees shall be paid upon Court award by the Reorganized Debtor from the Post-Confirmation Assets.

3.5. **U.S. Trustee Fees**. All unpaid U.S. Trustee Fees incurred before the Effective Date shall be timely paid by the Debtor in the ordinary course as such U.S. Trustee Fees become due and payable. All unpaid U.S. Trustee Fees incurred after the Effective Date shall be timely paid from Post-Confirmation Assets by the Reorganized Debtor in the ordinary course as such U.S. Trustee Fees become due and payable.

3.6. **Priority Tax Claims**. As soon as practicable after the Effective Date, the Reorganized Debtor shall pay to each Holder of an Allowed Priority Tax Claim from the Post-Confirmation Assets the full amount of such Claims.

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1. **Class 1 (Non-Tax Priority Claims).** INTENTIONALLY OMITTED

4.2. **Class 2 (Secured Claims).** INTENTIONALLY OMITTED

4.3. **Class 3 (Noteholder Claims).** Each Holder of an Allowed Noteholder Claim shall receive in full satisfaction thereof its Pro Rata share of the Reorganized Debtor Common Stock Creditor Distribution

4.4. **Class 4 (General Unsecured Claims).** Each Holder of an Allowed General Unsecured Claims shall receive in full satisfaction thereof its Pro Rata share of the General Unsecured Claims Distribution.

4.5. **Class 5 (Interests).** On the Effective Date, equity interests the Debtor shall be extinguished and canceled, and the shares so canceled shall be restored to the status of authorized but unissued shares pursuant to Woozyfly's corporate charter, certificate of incorporation and by-laws, all with no further action required to accomplish same. Pursuant to the absolute priority requirements of §1129(b)(2) of the Code, the holders of Class 5 Interests shall receive no distribution under the Plan.

4.6. **Reservation of Rights.** Except as otherwise provided in the Plan or the Confirmation Order, the Debtor's or Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Claims or Administrative Expense Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments, shall be unaffected and unaltered. From and after the Effective Date, the Reorganized Debtor shall be deemed to be the successor in interest to the Debtor with respect to all such rights and defenses.

839326-3

## ARTICLE V
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

5.1.    **Conditions Precedent.**

Each of the following events shall occur on or before the Effective Date:

(i)     the Merger Parties will have obtained all necessary government approvals, and filed all necessary documents or reports with the SEC to consummate the Merger;

(ii)    the Merger Documents will be in a form satisfactory to each merger Party and shall have been fully executed by the Merger Parties;

(iii)   The Final Confirmation Order shall have been entered, in a form and substance reasonably acceptable to each of the Plan Proponents and which shall include one or more findings that (i) the Plan was proposed in good faith by the Plan Proponents, (ii) the Plan satisfied the applicable provisions of the Bankruptcy Code as set forth in Bankruptcy Code § 1125(e), and (iii) the Reorganized Debtor is a successor to the Debtor only to the limited extent needed to comply with Bankruptcy Code § 1145 and for no other reason under any state or federal law.

(iv)    The Debtor shall be in full compliance with all state and federal (including SEC) tax and securities laws and regulations.

(v)     The Debtor shall be current on all state and federal (including SEC) tax and securities filing requirements, including all required tax returns and audits.

(vi)    The Bankruptcy Court shall have determined that the Reorganized Debtor is duly authorized to take the actions contemplated in the Plan which approval and authorization may be set forth in the Confirmation Order.

(vii)   All documents, instruments, and agreements provided under, or necessary to implement the Plan shall have been executed and delivered by the applicable parties.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1.    **Waiver of Conditions Precedent to the Effective Date.**  The Plan Proponents may waive in writing any or all of the conditions precedent to the Effective Date set forth above, whereupon the Effective Date shall occur without further action by any Person.

6.2.    **Merger.**  On the Effective Date, Old STW, along with its assets, shall merge with and into STW Sub.  Following the merger, the Reorganized Debtor shall be a public company known as STW Global, Inc.

9

839326-3

6.3.    **Vesting of Post-Confirmation Assets in Reorganized Debtor for Distribution.**  On the Effective Date, the Post-Confirmation Assets shall be vested in the Reorganized Debtor for Distribution pursuant to the terms of the Plan.

6.4.    **Dissolution of C.J. Vision Enterprises, Inc.**  Pursuant to a resolution of the Board of Directors and approval of the majority of the stockholders entitled to vote, on the Effective Date, C.J. Vision, a Delaware corporation, will be dissolved pursuant to 8 Del. C. § 275.  In accordance with applicable law, a certificate of dissolution will be filed with the Secretary of State of Delaware.

6.5.    **Certificate of Incorporation and By-Laws of Reorganized Debtor, Directors, Officers and Corporate Action.**

   (i)    *Certificate of Incorporation and By-Laws.*  On the Effective Date (or as soon as reasonably practicable thereafter), the Reorganized Debtor shall file its amended certificate of incorporation and by-laws (which shall be filed with the Bankruptcy Court as part of the Plan Supplement).  The amended certificate of incorporation shall satisfy the provisions of the Plan and the Bankruptcy Code.  After the Effective Date, the Reorganized Debtor may amend and restate the amended certificate of incorporation and by-laws as permitted by applicable law.

   (ii)   *Directors and Officers of the Reorganized Debtor.*  On the Effective Date, the members of the Debtor's board of directors and officers will continue in their current roles and the classification and composition of the board of directors of the Reorganized Debtor will remain the same. The Debtor's current interim chief executive officer, Eric Stoppenhagen, shall work for the Reorganized Debtor as the chief restructuring officer.

6.6.    **Cancellation of Instruments and Stock.**  On the Effective Date, all Interests in the Debtor, any and all stock options (including, but not limited to, all stock options granted to the Debtor's employees), any and all warrants and any instrument evidencing or creating any indebtedness or obligation of the Debtor, except such instruments that are issued under the Plan, shall be canceled and extinguished.  Additionally, as of the Effective Date, all Interests in the Debtor, and any and all warrants, options, rights or interests with respect to equity interest in the Debtor that have been authorized to be issued but that have not been issued shall be deemed canceled and extinguished without any further action of any party.

All such cancelled and extinguished Interests in Woozyfly shall constitute shares authorized but unissued pursuant to Woozyfly's corporate charter, certificate of incorporation and by-laws, each of which shall remain in effect for the Reorganized Debtor.

6.7.    **Issuance of Reorganized Debtor Common Stock.**  Shares of Reorganized Debtor Common Stock authorized under the Reorganized Debtor's certificate of incorporation and by-laws shall be issued in connection with the Reorganized Debtor Common Stock Creditor Distribution pursuant to the terms thereof.  The Reorganized Debtor Common

10

Stock Creditor Distribution shall be exempt from registration under the Securities Act and any state or local law pursuant to Bankruptcy Code § 1145.

(i)      **Continuation of the Debtor and Reorganized Debtor:** The Reorganized Debtor shall act as disbursing agent.  The Reorganized Debtor shall be responsible for: (a) paying, objecting to, settling and administering Administrative Expense Claims and Priority Claims; (b) paying, objecting to, settling and administering Class 1, Class 2, Class 3 and Class 4 Claims; (c) paying U.S. Trustee Fees after the Effective Date; and (d) performing normal wind-up administrative activities and functions for the Post-Confirmation Assets.

(ii)     **Creation of Reserve for Expenses and Professional Fees**.  To the extent necessary to pay the anticipated awards of fees of the professionals retained by the Debtor in its Case and to pay the post-Effective Date expenses of the Debtor, before making the Distributions, the Reorganized Debtor shall create a reserve sufficient to fund all such payments.

6.8.    **Settlement of Disputed Claims Prior to the Effective Date.**  At any time prior to the Effective Date, notwithstanding anything in the Plan to the contrary, the Debtor may settle some or all Disputed Claims subject to obtaining any necessary Bankruptcy Court approval.

6.9.    **Operating Reports.**  Prior to the Effective Date, the Debtor shall timely file all reports, including without limitation, monthly operating reports, required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules or Office of the United States Trustee.  After the Effective Date, the Reorganized Debtor shall timely file all reports, including without limitation, quarterly operating reports, as required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules or Office of the United States Trustee.

## ARTICLE VII
## BAR DATES, CLAIMS OBJECTIONS AND DISTRIBUTIONS

7.1.    **Distributions for Claims Allowed as of the Effective Date.**  Except as otherwise provided herein or as ordered by the Bankruptcy Court, Distributions to Creditors shall be made as soon as practicable after the Effective Date.  Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made as soon as reasonably practicable after such Claim becomes an Allowed Claim.

7.2.    **Means of Cash Payment.**  Cash payments made pursuant to the Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Reorganized Debtor.

7.3.    **Delivery of Distribution.**  Distributions to holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such holders (or at the last known addresses of such holders if no Proof of Claim is Filed or if the Debtor has been notified of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor; or (c) if no Proof of Claim has

11

839326-3

been Filed and the Reorganized Debtor has not received a written notice of a change of address, at the addresses reflected in the Bankruptcy Schedules, if any.

7.4. **Objection Deadline; Prosecution of Objections; Late Filed Claims Expunged.** As soon as reasonably practicable, the Reorganized Debtor shall File objections to Claims and serve such objections upon the holders of each of the Claims to which objections are made. All late filed Claims (those filed after the Bar Date) are deemed expunged absent further order of this Court allowing same. The Reorganized Debtor shall be authorized to resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having competent jurisdiction the validity, nature, and/or amount thereof. If the Reorganized Debtor and the holder of a Disputed Claim agree to compromise, settle, and/or resolve a Disputed Claim by granting such holder an Allowed Claim in the amount of $10,000 or less, then the Reorganized Debtor may compromise, settle, and/or resolve such Disputed Claim without further Bankruptcy Court approval. Otherwise, the Reorganized Debtor may only compromise, settle, and/or resolve such Disputed Claim with Bankruptcy Court approval.

7.5. **No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan, no payments or Distribution by the Reorganized Debtor shall be made with respect to all or any portion of a Disputed Claim in which the Reorganized Debtor has an interest unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

7.6. **Withholding and Reporting Requirements.** In connection with the Plan and all Distributions hereunder, the Reorganized Debtor shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtor shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements.

7.7. **Setoffs.** The Reorganized Debtor may, but shall not be required to, setoff against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or the Reorganized Debtor, respectively, may have against the holder of such Claim; provided, however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such Claim that the Reorganized Debtor may have against such holder, unless otherwise agreed to in writing by such holder and the Reorganized Debtor, as applicable.

# ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES DEEMED REJECTED

All of the Debtor's executory contracts and unexpired leases shall be deemed rejected on the Effective Date except to the extent (a) the Debtor previously has assumed or rejected an

839326-3

executory contract or unexpired lease, or (b) prior to the Effective Date, the Debtor has Filed or does File a motion to assume an executory contract or unexpired lease on which the Bankruptcy Court has not ruled.

## ARTICLE IX
## EFFECTS OF CONFIRMATION

The Plan provides that Confirmation shall have the following effects:

9.1.    **Discharge**.    Except as otherwise set forth in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims including any interest accrued on any Claims from the Petition Date, and the termination of all Interests.  Confirmation shall (a) discharge the Debtor and the Reorganized Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of a kind specified in Bankruptcy Code §§ 502(g), (h), or (i), whether or not (i) a Proof of Claim based on such debt is Filed or deemed Filed under Bankruptcy Code § 501; (ii) a Claim based on such debt is Allowed; or (iii) the holder of a Claim based on such debt has accepted the Plan; and (b) terminate all Interests and other rights of Interests in the Debtor.

9.2.    **Injunction.**    Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against or Interests in the Debtor, and all other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kin on any such Claim or Interest against the Debtor, the Reorganized Debtor or the Plan Proponent, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or other against the Debtor, the Reorganized Debtor or the Plan Proponent, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor or the Plan Proponent or against the property or interests in property of the Debtor, the Reorganized Debtor or the Plan Proponent, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtor or against the property or interests in property of the Debtor, Reorganized Debtor or the Plan Proponent with respect to such Claim or Interest or (e) pursuing any claim released pursuant to this Article IX of the Plan.  Such injunction shall extend to any successors of the Debtor and the Reorganized Debtor, and their respective properties and interests in properties.

9.3.    **Exculpation and Limitation of Liability.**    Pursuant to and to the extent permitted by section 1125(e) of the Code, and notwithstanding any other provision of the Plan, no holder of a Claim or Interest shall have any right of action against the Debtor, the Reorganized Debtor, the Post-Confirmation Assets, the Plan Proponents or any of their respective managers, officers, directors, agents, attorneys, investment bankers, financial advisors, other professionals, or any of their respective property and assets for any act or omission in connection with, relating to or arising out of the pursuit of confirmation of

13

the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence.

9.4.    **RELEASES**.  ON THE EFFECTIVE DATE, THE DEBTOR, THE REORGANIZED DEBTOR AND THE PLAN PROPONENTS (COLLECTIVELY, THE "RELEASOR PARTIES") SHALL BE DEEMED TO HAVE RELEASED AND DISCHARGED TO THE FULLEST EXTENT POSSIBLE ALL PRESENT AND FORMER OFFICERS, DIRECTORS, AGENTS, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONALS EMPLOYED BY OR ASSOCIATED WITH THE RELEASOR PARTIES (THE "RELEASED PARTIES"), OF AND FROM ANY AND ALL CLAIMS OR CAUSE OF ACTIONS, WHETHER KNOWN OR UNKNOWN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE STATE OR FEDERAL LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS (EXCEPT FOR GROSS NEGLIGENCE OR INTENTIONAL FRAUD) OCCURRING ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN AND THE RELEASOR PARTIES COVENANT NOT TO SUE ANY OF THE RELEASED PARTIES WITH RESPECT TO THE CLAIMS RELEASED HEREIN.

Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, and/or Confirmation Order, no provision shall release any non-debtor, including any current and/or former officer and/or director of the Debtor and/or Plan Proponent, and any non-debtor, from liability in connection with any legal action or claim brought by the United States SEC.

9.5.    **Legal Binding Effect.**  The provisions of the Plan shall bind all holders of Claims and Interests and their respective successors and assigns, whether or not they accept the Plan.

9.6.    **Insurance.**  Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor is or was an insured party.  Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Case, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan for insured Claims.

## ARTICLE X
## RETENTION OF JURISDICTION

Pursuant to Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(i)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any

839326-3

application or request for payment of any Administrative Claim, and the resolution of any objections to the allowance or priority of Claims;

(ii)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all causes of action, and consider and act upon the compromise and settlement of any Claim, or cause of action;

(iii)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection therewith;

(iv)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan;

(v)     consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(vii)   hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, and the Confirmation Order;

(viii)  enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

(ix)    hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

(x)     hear and determine all matters related to the Post-Confirmation Assets, the Debtor, and the Reorganized Debtor from and after the Effective Date;

(xi)    hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

(xii)   enter a final decree closing the Cases.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS.

11.1.   **Revocation, Withdrawal or Non-Consummation.**  Without limiting the application of Article 11.2 of the Plan, the Debtor, upon five (5) Business Days notice to the other, reserves the right to withdraw as a Plan Proponent prior to the Confirmation Hearing Date.  If the Plan is withdrawn or if Confirmation or Effective Date does not occur, then

15

(a) the Plan shall be null and void in all respects, (b) settlements or compromises embodied in the Plan, assumptions or rejections of executory contracts or unexpired leases affected by the Plan, and any documents or agreements executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor, the Plan Proponent or any other Person, or (iii) constitute an admission of any sort by the Debtor, the Plan Proponent or any other Person.

11.2.    **Severability of Plan Provisions.**  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of either of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.3.    **Exemption from Transfer Taxes**.  In accordance with Bankruptcy Code § 1146(a), the Bankruptcy Court will be requested to make findings, in the Confirmation Order, that: (i) the issuance, transfer or exchange of security under the Plan or the making or delivery of an instrument of transfer, and (ii) the transfers of the Debtor's assets, shall not be taxed under any law imposing stamp or similar tax.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any stamp or similar tax.

11.4.    **Interest Accrual.**  No postpetition interest shall accrue on any Claim or scheduled liability (including, but not limited to, Allowed Administrative Expense Claims).

11.5.    **Allocation of Plan Distributions between Principal and Interest.**  To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first, and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

11.6.    **Rules of Interpretation; Computation of Time.**  For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit

16

filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits, if any, are references to Sections, Articles, and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply.   In computing any period of time prescribed or allowed by the Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

11.7.    **Successors and Assigns.**   The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

11.8.    **Governing Law.**   Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, and (b) governance matters shall be governed by the laws of the State of Delaware, without giving effect to the principles of conflict of law thereof.

11.9.    **Entire Agreement.**   The Plan sets forth the entire agreement and understanding among the parties in interest relating to the subject matter hereof and supersedes all prior discussions and documents.

11.10.   **Modification of the Plan.**   The Debtor may alter, amend, or modify the Plan or any Plan Documents under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to Effective Date of the Plan, the Plan Proponents may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially or adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

839326-3

Dated: November 23, 2009

**WOOZYFLY, INC.**
**Debtor and Debtor-in-Possession**

By:      /s/ Eric Stoppenhagen
Name:    Eric Stoppenhagen
Title:   President

**MKM OPPORTUNITY MASTER FUND, LTD.**
**Plan Proponent**

By:      /s/ Anil Narang
Name:    Anil Narang
Title:   Partner

18